## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| STEPHEN PATRICK KELLY,<br><br>       Plaintiff,<br><br>vs.<br><br>COMMUNITY PROTESTANT CHURCH, a Montana religious entity, BOB EVEREST, THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation, BISHOP HALES,<br><br>       Defendants. | **CV-22-20-BU-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Plaintiff Stephen P. Kelly ("Kelly") brought this action *pro se* against the following Defendants: Community Protestant Church; Pastor Bob Everest ("Pastor Everest") in his official capacity; The Church of Latter-Day Saints ("LDS Church"); and Bishop Glenn Hales ("Bishop Hales") in his official capacity (collectively "Defendants"). (Doc. 2.) Kelly alleges that Defendants defamed him

and unlawfully disclosed information on the social media platform Facebook in violation of the House of Worship doctrine. (Doc. 2.)

Defendants LDS Church and Bishop Hales filed an Answer in response to Kelly's Complaint. (Doc. 13.) Kelly and LDS Church and Bishop Hales ("LDS Defendants") have filed numerous motions. Kelly filed a motion to strike Defendants' Answer (Doc. 17), to which LDS Defendants filed a response. (Doc. 21.)

The Court granted Kelly's Motions (Docs. 9 & 12) regarding Service of Summons and Complaint by the United States Marshal Service on Defendants Community Protestant Church and Pastor Everest ("Protestant Defendants"). (Doc. 26.) Pursuant to Fed. R. Civ. P. 4(c)(3), the United States Marshal Service served a copy of the summons and complaint on the Protestant Defendants by U.S. mail on October 3, 2022. (Doc. 27.) Protestant Defendants have yet to appear.

Both Kelly and LDS Defendants filed motions for scheduling orders, as well as motions for discovery. (See Docs. 18, 19, 20, 24.) Kelly also filed a Motion for Special Ruling on three separate issues. (Doc. 22.) Kelly separately filed a motion to strike LDS Defendants' response to Kelly's motion (Doc. 29); a Motion to Direct Service (Doc. 30); and a Motion for Extension of Time. (Doc. 32.)

The Court did not hold a hearing on the motions. For the following reasons, the Court dismisses Kelly's action without prejudice.

# BACKGROUND

*Pro Se* Plaintiff Kelly brought this action against LDS Defendants and Protestant Defendants, alleging defamation in violation of Mont. Code Ann. §§ 27-1-802 and -803, and unlawful disclosure of privileged information in violation of the House of Worship doctrine. (Doc. 2.) Kelly alleges that during May 2021, Kelly was camping at Bakers Hole, a U.S. Forest Service campground near West Yellowstone, Montana. (Doc. 2 at 12, ¶ 27.) While camping, Kelly alleges that he observed a black bear directly behind his campsite for four consecutive nights. (Doc. 2 at 12, ¶ 27.) Kelly alleges that the West Yellowstone police department responded, as well as Montana Fish Wildlife and Parks Game Warden Robert Pohle, to his 911 calls to investigate Kelly's bear reporting. (Doc. 2 at 13, ¶¶ 27–30.) Kelly alleges that Warden Pohle and a nearby game camera confirmed the black bear's presence near Kelly's campsite. (Doc. 2 at 13, ¶¶ 30–31.)

Kelly, it appears, posted the black bear information on Facebook, a social media platform. (Doc. 2 at 14, ¶ 32.) Kelly alleges that Bishop Hales and Paster Everest posted on Facebook, asserting that "Kelly, was in fact a habitual lyer [sic]" and that "Kelly, in fact, obtained a severe mental disorder, and mental loathsome disease!!!" (Doc. 2 at 14, ¶ 32.) Kelly alleges that Bishop Hales and Pastor Everest were motivated to "conceal" Kelly's bear

citing in order to protect their "sincere business interest in the tourism district of West Yellowstone, and pursuant to their final loss due to bear safety." (*Id*.)

Kelly alleges that the Facbook postings "caused Kelly, to be (shunned and avoided) [sic] by the West Yellowstone community, and Kelly's two potential employer's [sic]," resulting in loss of employment. (Doc. 2 at 14, ¶33.) Kelly further alleges that Bishop Hales authored an email to Kelly's new employer, a private contracting company in Yellowstone National Park, in which Bishop Hales defamed him by writing that Kelly "obtained a severe mental illness, and loathsome disease, and in that, was not qualified for the concise position," as well as disclosed confidential information. (Doc. 2 at 15, ¶ 24.) Kelly alleges that Bishop Hales's email communication to his employer resulted in Kelly's termination. (*Id*.)

Kelly additionally alleges that both Bishop Hales and Pastor Everest defamed him, which caused him to be denied future employment opportunities by contacting the U.S. Forestry Department's Human Resources Department in Washington, D.C., as well as the local U.S. Forest Service Supervisor. (Doc. 2 at 18, ¶ 37.) Kelly alleges that his interview was cancelled and he was denied employment at the U.S. Forest Service because of these email communications defaming him. (*Id*.) Kelly filed no evidence, affidavits, or supplemental documentation with the Complaint.

Kelly alleges that Bishop Hales and Pastor Everest disclosed confidential information in violation of the House of Worship doctrine by sharing information that he had disclosed to them during privileged conversations with trusted clergy members. (Doc. 2 at 20, ¶ 38.) Kelly alleges that he had not authorized Bishop Hales or Pastor Everest to disclose information he had shared with them when he was experiencing emotional distress and depression. (Doc. 2 at 19–20, ¶ 38.)

Kelly requests that this Court find Defendants jointly and severally liable for defamation and violation of the House of Worship doctrine. Kelly seeks actual damages in the amount of $900,000 for loss of employment as a result of Defendant's defamation. (Doc. 2 at 24.)

## ANALYSIS

### I.  Plaintiff's Motion for Special Ruling

Kelly's Motion for Special Ruling includes the following items: (1) a motion for service of process by the United States Marshal Service on Protestant Defendants; (2) a motion to deny LDS Defendants' motion to restrict plaintiff from filing additional lawsuits; and (3) a motion for voluntary dismissal. (Doc. 22.)

The Court singularly addresses Kelly's motion for voluntary dismissal. Kelly requests the Court voluntary dismiss this action on the basis that the Court lacks diversity jurisdiction. (Doc. 22 at 3–4.) Kelly suggests the Court may, in its

discretion, grant "voluntary dismissal" of his claims because Kelly no longer resides in Iowa. (Doc. 22, pp. 1, 3-4.) Kelly also asserts his intent to file this action in the local state district court of Montana. (Doc. 22 at 4.) LDS Defendants oppose Kelly's motion for voluntary dismissal. (Doc. 23.) They argue they will be prejudiced because of Kelly's allegedly acting as an "extreme serial litigant" who has abused the legal process. (Doc. 23 at 4.)

The Court grants Kelly's request. Whether to grant a motion for voluntary dismissal falls to the sound discretion of the district court. *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982). Kelly filed his motion *pro se*. The Court holds pro se filings to less stringent standards than those of lawyers. *Constantinides v. Los Angeles Cnty. Sheriff*, 955 F.2d 47 (9th Cir. 1992) (citing *Haines v. Kerner,* 404 U.S. 519, 520 (1972)).

Rule 41 of the Federal Rules of Civil Procedure allows a plaintiff to dismiss an action by filing a notice of dismissal. When a plaintiff with the right to voluntarily dismiss by notice nevertheless files a motion seeking an order of dismissal, the court may treat it as a notice of dismissal under Rule 41(a)(1)(A)(i). The right to dismiss voluntarily exists before the defendant files an answer or summary judgment. Fed. R. Civ. P. 41(a)(1)(A)(i). If one defendant has answered or moved for summary judgment, but another defendant has not, the plaintiff still may dismiss the action by notice with respect to the defendant that has not

6

answered or moved for summary judgment. Fed. R. Civ. P. 41. Dismissal of

Actions, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 4;

*Constantinides v. Los Angeles Cnty. Sheriff,* 955 F.2d 47 (9th Cir. 1992).

Kelly filed a motion, instead of a notice, of voluntary dismissal on the

grounds that the Court now lacks diversity jurisdiction over this action. Kelly's *pro*

*se* plaintiff status leads the Court to hold his filings to less stringent standards than

those of lawyers. *Haines,* 404 U.S. at 520 (1972). The Court may construe Kelly's

request for dismissal as a notice of dismissal without prejudice under Rule

41(a)(1). *Constantinides v. Los Angeles Cnty. Sheriff*, 955 F.2d 47 (9th Cir. 1992).

Kelly's change of residence from Montana to Iowa after he filed his Complaint

does not affect diversity jurisdiction. Diversity jurisdiction is based on the parties'

state of residence at the time an action is commenced. *Smith v. Campbell*, 450 F.2d

829, 832 (9th Cir. 1971). A subsequent change of residency does not divest a

federal court of jurisdiction. *Id*.

LDS Defendants filed an Answer to Kelly's Complaint. (Doc. 13). Protestant

Defendants have not yet appeared, however, and not yet filed an answer or motion

for summary judgment. Kelly still can dismiss the action by notice with respect to

both sets of defendants here: the LDS Defendants who have answered and the

Protestant Defendants who have not yet answered or moved for summary

judgment. Fed. R. Civ. P. 41. *Constantinides v. Los Angeles Cnty. Sheriff*, 955 F.2d 47 (9th Cir. 1992).

Kelly argues incorrectly with regard to his voluntary dismissal. Regardless, "the reason for the dismissal is irrelevant under Rule 41(a)(1)." *Adams v. USAA Cas. Ins. Co.,* 863 F.3d 1069, 1080 (8th Cir. 2017). Rule 41(a)(1) cases require no judicial approval or review as a prerequisite to dismissal; in fact, the dismissal is effective upon filing, with no court action required. *Id*.; Fed. R. Civ. P. 41(a)(1). The Court dismisses Kelly's action without prejudice subject to Fed. R. Civ P. 41(a). The Court does not grant LDS Defendants' request to order Kelly to pay LDS Defendants' litigation expenses.

## II. Remaining Motions

The Parties' remaining motions are now moot. The Court dismisses all outstanding motions.

Accordingly, **IT IS ORDERED**:

Plaintiff's Motion for Special Ruling (Doc. 22) is GRANTED in part. The action against all Defendants is voluntarily **DISMISSED** without prejudice, with each of the parties to bear their own costs and attorney's fees. The Clerk of Court is directed to enter judgment accordingly.

Dated the 1st day of November, 2022.

Brian Morris, Chief District Judge
United States District Court